UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
SAL CELAURO, JR., PAUL S. ASTRUP,
ROSANNE B. ASTRUP,

                          Plaintiffs,         **MEMORANDUM OF**
                                               **DECISION AND ORDER**
             -against-                 05-cv-02245-ADS-WDW

UNITED STATES, INTERNAL REVENUE
SERVICE, LAWRENCE ENGLE, Individually
and in His Official Capacity,
SMITH'S AEROSPACE, INC.,
TEACHER'S FEDERAL CREDIT UNION
DCS TRANSPORT & LOGISTICS SOLUTIONS,

                          Defendants.
----------------------------------------------------X

**APPEARANCES**

**SAL CELAURO JR.**
<u>PRO SE</u> Plaintiff
4940 Merrick Road, # 117
Massapequa, NY 11762

**PAUL S. ASTRUP**
<u>PRO SE</u> Plaintiff
5 Washington Drive
E. Quogue, NY 11942
631-728-0299

**ROSANNE B. ASTRUP**
<u>PRO SE</u> Plaintiff
5 Washington Drive
E. Quogue, NY 11942

**U.S. DEPARTMENT OF JUSTICE**
Attorneys for the Defendant United States, Internal Revenue Service, and
Revenue Officer Lawrence Engel
P.O. Box 55, Ben Franklin Station
Washington, DC 20044-0055
      By:     Karen Elizabeth Wozniak, Trial Attorney

**VINCENT CAMPASANO, ESQ.**
Attorney for the Defendant Teacher's Federal Credit Union
2000 Deer Park Ave.
Deep Park, New York 11729

**NO APPEARANCE**
Defendants Smith's Aerospace, Inc., and DCS Transport & Logistics Solutions

**SPATT, District J.**

This is an action challenging the constitutionality and operation of the income tax system. The plaintiffs Sal Celauro Jr. ("Celauro"), Paul S. Astrup, and Rosanne B. Astrup ("Paul and Rosanne Astrup") (collectively, the "Plaintiffs") are associated with a group known as "We the People Foundation for Constitutional Education, Inc.," that seeks to redress the Government's alleged violations of the Constitution's tax, war powers, money, debt limiting, and privacy clauses.

In this case, the Plaintiffs seek the following: (1) the return of $12,700.00 that the defendant Smith's Aerospace, Inc. garnished from Paul Astrup's wages and turned over to the IRS without a court order; (2) the return of $3,070.24 that the defendant Teacher's Federal Credit Union garnished from Paul and Rosanne Astrup's savings account and turned

over to the IRS; and (3) the return of $7,942.69 that the defendant DCS Transport & Logistics Solutions ("DCS") garnished from Celauro's wages and turned over to the IRS.

The Plaintiffs also seek injunctive relief as follows: (1) an order permanently enjoining the IRS and defendant IRS Revenue Officer Lawrence Engel ("Engel") (improperly referred to in the caption as "Engle") from abusing their authority by threatening private organizations with IRS civil enforcement actions; (2) an order permanently enjoining Smith's Aerospace, Inc. ("Aerospace"), Teacher's Federal Credit Union ("TFCU"), and DCS (collectively the "private Defendants") from complying with any notice of levy that is not backed by an order from "a court of competent jurisdiction;" and (3) an order preliminarily enjoining the private Defendants from garnishing any money from the accounts or wages of the Plaintiffs and turning that money over to the IRS. This request for preliminary relief is the subject of this memorandum.

## I. BACKGROUND

### A. Facts as to the Plaintiff Paul and Rosanne Astrup

On October 8, 2004, IRS Revenue Officer Engel sent a "Notice of Levy on Wages, Salaries and other Income" for the years 1996 and 1997 in the amount of $1,669.15 to Paul Astrup's employer Aerospace with regard to his earnings. The Notice of Levy was signed by Astrup and returned to the IRS. During the next four pay periods Aerospace took $1,669.15 of earnings from Astrup's pay. On October 14, 2004, Astrup sent a "Petition

for Redress" to the IRS that informed the IRS of his intention to take the dispute over his tax liability to the United States District Court.

On November 29, 2004, Engel sent a "Notice of Levy on Wages, Salaries and other Income" for the years 1998–2001 to Aerospace in the amount of $51,730.34. On November 30, 2004, Engel sent a "Notice of Levy" for the years 1998–2001 in the amount of $51,730.34 to the TFCU where Astrup had a bank account. The TFCU took $3,070.24 from Astrup's savings account ant turned it over to the IRS.

On December 9, 2004, Engel served Astrup with an Administrative Summons requiring him to appear on January 6, 2005, and to produce his private and personal books and records for the years 1998–2001. On January 6, 2005, Astrup met with Engel for about 15 minutes. In the meeting, Astrup "asked more questions regarding liability" and Engel "refused to answer the questions."

**B.  Facts as to the Plaintiff Celauro**

On November 13, 2003, Celauro was visited by Engel at DCS his place of business . Engel claimed that Celauro owed taxes. Celauro denied the claims and refused to answer questions. Celauro was served with a summons to appear at the IRS office in Garden City on December 1, 2003. On November 21, 2003, Celauro received a memo from his employer DCS regarding a letter that was sent to it by the IRS. The letter informed DCS that Celauro's Form W-4, Employee's Withholding Allowance Certification, did not

conform with the requirements of the IRS Code. The letter directed DCS to withhold tax as if Celauro was a single taxpayer. DCS complied and started withholding taxes in accordance with the IRS letter.

On December 1, 2003, Celauro appeared at the IRS office and a hearing was conducted. At the hearing the IRS was represented by Engel and Revenue Officer Sara Ann Gagliardi. During the hearing, Celauro questioned whether he was required to turn over the information to the IRS. Engel responded that it was mandatory. At the end of the hearing, <u>Celauro</u> presented Engel with numerous documents such as "Statement of Facts and Beliefs about the Regarding the Individual Income Tax," "Produce the Law That Imposes a Tax on Me, My Property, of My Activities, or Leave Me Alone!," and "Questions Needing Answers" all pertaining to issues about the tax code. Celauro never received a response.

Between December 1, 2003 and February 4, 2004, Celauro sent numerous documents, requests for answers, and letters to Engel, all with no response. DCS continued withholding federal taxes from Celauro's wages.

On December 23, 2003, Engel filed a Form 668(Y)(c) Notice of Federal Tax Lien in the amount of $22,285.96 against Celauro with the Clerk of Nassau County, New York. On January 26, 2004, Engel sent DCS a Notice of Levy on Wages, Salary, and Other Income" in the amount of $23,143.31 with regard to Celauro's earnings. On February 6,

2004, Celauro received his paycheck with a garnishment amount in the sum of $1,596.84 deducted. On February 23, 2004, Celauro resigned from DCS.

On May 7, 2004, Engel handed Celauro a summons to appear at the IRS on May 25, 2004. The meeting was postponed to June 8, 2004. On June 8, 2004 a hearing was held at the IRS office. Engel was present for the IRS along with a Revenue Agent and an IRS attorney. During the hearing Celauro was served with IRS Letter 3221(DO), which informed Celauro that he owed the IRS the sum of $20,727.33 in unpaid taxes.

On November 13, 2004, Celauro received a Letter 950 (DO) from the IRS Director for the North Atlantic Examination which proposed changes to his federal tax years 1998–2001. The letter offered Celauro with two options: (1) agree with the proposed changes and pay the amount; or (2) disagree with the amount and request a conference with the Appeals Office. On the same day, Celauro sent a letter to the IRS stating the he would not answer or respond to "fraudulent documents and that they were being returned."

This case was filed on May 9, 2005.

## II. DISCUSSION

### A. Preliminary Injunction Standard

To obtain a preliminary injunction, a plaintiff must show: (1) irreparable harm; and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in the plaintiff's favor. See

6

International Dairy Foods Ass'n, 92 F.3d at 70; Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

However, where, as in this case, a plaintiff seeks an injunction to "prevent government action taken pursuant to statutory authority, which is presumed to be in the public interest," the second "serious questions" prong is inapplicable and the plaintiff is required to demonstrate a likelihood of success on the merits. See Molloy v. Metropolitan Trans. Auth., 94 F.3d 808, 811 (2d Cir. 1996) (citing Able v. United States, 44 F.3d 128, 130 (2d Cir. 1995)).

In addition, the courts are barred from entertaining suits that seek to restrain the assessment or collection of any tax. 26 U.S.C. § 7421. The Anit-Injunction Act withdraws jurisdiction from the state and federal courts in any suit seeking an injunction prohibiting the collection of federal taxes and requires that the legal right to a disputed sum be determined in a suit for refund. Id.; see Mullings v. Commissioner, 78 A.F.T.R.2d (RIA) 6109, 96-2 U.S. Tax Cas. (CCH) P50531 (E.D.N.Y. 1996), aff'd, 112 F.3d 504 (2d Cir. 1997).

The only exception to the general prohibition against injunctions of this type is if a taxpayer establishes that: "(1) under the most liberal view of the law and facts in favor of the government, the government cannot succeed on the merits of the tax claim, and (2) equitable jurisdiction exists because the taxpayer may suffer irreparable harm and does not have an

adequate remedy at law." Id. (citing Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S. Ct. 1125, 8 L. Ed. 2d 292 (1962)).

**B.    Collection of Tax by Levy and Distraint**

The Internal Revenue Code provides two principal tools for the collection of delinquent taxes. The first is the lien-foreclosure suit. Under 26 U.S.C. § 7403(a), the IRS is authorized to institute a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721, 105 S. Ct. 2919, 86 L. Ed.2d 565 (1985). The second is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and generally "does not require any judicial intervention." United States v. Rodgers, 461 U.S. 677, 682, 103 S. Ct. 2132, 2137 (1983); 26 U.S.C. § 6331(a).

The IRS may collect delinquent taxes from a taxpayer by issuing a levy on the taxpayer's "property and rights to property." 26 U.S.C. § 6331(a). The levy protects the Government against loss or diversion of the subject property while such claims are being resolved. Rodgers, 461 U.S. at 682, 103 S. Ct. at 2137. Section 6331 provides a comprehensive scheme for the administrative enforcement of levy and distraint, or in other words, the administrative seizure and sale of a taxpayers's property and rights to property. 26 U.S.C. § 6331(a).

8

The administrative scheme under § 6330 is as follows. The IRS District Director first gives notice of a delinquent tax assessment and a demand for payment to the taxpayer. Id. The taxpayer thereafter has ten days in which to pay the tax before distraint proceedings commence. Id. The taxpayer must also receive a notice of intent to levy with a right to appeal within 30 days prior to any levy or notice of levy. 26 U.S.C. § 6330. A hearing is then held before "an officer or employee [of the IRS] who has had no prior involvement . . ." in the case. Id. The taxpayer is afforded the right to appeal the decision after the hearing to the Tax Court or the United States District Court. Id.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." United States v. Rodgers, 461 U.S. 677, 681–82, 103 S. Ct. 2132, 2136 (1983). After notice and an opportunity to be heard under § 6330, a District Director of the IRS is empowered to collect the assessed tax by levy and sale of all property, or rights to property, of the delinquent person or any property on which there is a lien for payment of the tax. Id. 26 U.S.C. § 6331(a)

In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to § 6332(a). This notice gives the IRS the

9

right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. Phelps v. United States, 421 U.S. 330, 334, 95 S. Ct. 1728, 1731, 44 L. Ed.2d 201 (1975). If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. § 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal. 26 U.S.C. § 6332(c)(1); see, e.g., Weissman v. U.S. Postal Service, 19 F. Supp. 2d 254, 260 (D.N.J. 1998).

"The constitutionality of the levy procedure . . . 'has long been settled.' " Nat'l Bank of Commerce, 472 U.S. at 721, 105 S. Ct. at 2925 (quoting Phillips v. Commissioner, 283 U.S. 589, 595, 51 S. Ct. 608, 611 (1931) ("Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.")); see also Hughes v. IRS, 62 F. Supp. 2d 796, 799 (E.D.N.Y. 1999).

**C.   The Merits of the Claim**

Upon a liberal reading of the plaintiffs' pro se application to this Court, it appears that they contend that a recent decision of the Second Circuit, Schulz v. IRS, 395 F.3d 463 (2d Cir. Jan. 25, 2005), renders the administrative levy and distraint procedures of the IRS

void. This argument is without merit. The Plaintiffs single out a small excerpt of the <u>Schulz</u> decision for the proposition that the IRS has no administrative power to place a levy on their wages and property. That portion states: "[A]bsent an effort to seek enforcement through a federal court, IRS summonses apply no force to taxpayers, and no consequence whatever can befall a taxpayer who refuses, ignores, or otherwise does not comply with an IRS summons until that summons is backed by a federal court order." <u>Id.</u> at 465. While by itself and on its face, this phrase may appear to curtail the enforcement authority of the IRS, further analysis reveals otherwise.

The factual and legal scenarios in <u>Schulz</u> were related to those in this case but they are critically different in certain respects. In that case, the IRS served the taxpayer with several summonses seeking testimony and documents in connection with an IRS investigation of the taxpayer. Upon receiving the summons, the taxpayer filed a motion to quash the summonses in the United States District Court. The court dismissed the action for lack of subject matter jurisdiction, finding that the IRS had never commenced a proceeding to enforce the subpoena. The Second Circuit affirmed, noting that the taxpayer was under no threat of consequence for refusing to comply with the summonses until such time the IRS chose to compel enforcement through a court order. <u>Id.</u> As such, there was no viable "case or controversy." <u>Id.</u>

As the Second Circuit noted in Schulz, 26 U.S.C. § 7604 governs the enforcement of summonses by the IRS. That section states, in relevant part:

> (a) Jurisdiction of district court.--If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
>
> (b) Enforcement.--Whenever any person summoned under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt.

Id.

Section 7604 and the Schulz case are inapplicable to the instant case for two critical reasons. First, the Plaintiffs are not contesting a summons issued by the IRS. Rather, the Plaintiffs contend that the Notice of Levy cannot be issued without a court order. Section 7604 and Schulz only involve the enforcement of IRS summonses and have no effect on the issuance of a Notice of Levy after notice and an opportunity to be heard.

Second, both of the Plaintiffs admit in their papers that they appeared for the summonses that the IRS issued to them. It also appears from the volumes of documents that they submitted to the IRS Revenue Agents at and after their hearings that they were

feverishly contesting their liability under the tax code and the laws of the United States. However, their arguments were dismissed by the IRS after notice and an opportunity to be heard. After this dismissal it is unclear whether the Plaintiffs sought an appeal through the mechanisms available to them in the IRS code. What is clear is that Plaintiffs continued to believe they did not owe taxes, and did not pay the amount the IRS demanded.

For these reasons, the IRS had no need to seek enforcement of any summonses in federal court. Indeed, in this case the Plaintiffs responded to each of the summonses that the IRS issued to them. There was no need for the IRS to enforce the summons through judicial intervention because the Plaintiffs complied with the requirements in the summons by appearing for the hearing. In addition, their subsequent refusal to pay the taxes the IRS determined they owed after the hearing empowered the IRS to validly file a levy upon their property and wages without the need of judicial enforcement. See, e.g., Rodgers, 461 U.S. 677, 681–82, 103 S. Ct. 2132, 2136.

For all these reasons, the Plaintiffs' claim that the Notice of Levy was improperly issued without a court order has no likelihood of success on the merits and does not appear to fit into the exception of the Anti-Injunction Act. Therefore, the request for the preliminary injunction is denied.

### III. CONCLUSION

The request for a preliminary injunction is denied.

**SO ORDERED**.

Dated: Central Islip, New York
May 13, 2005

>             */s/ Arthur D. Spatt*
>            ARTHUR D. SPATT
>          United States District Judge